# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

JASON DEAN BARNES,

    Movant,

vs.          Case No.:  3:21-cv-96-BJD-PDB
                    3:15-cr-112-BJD-PDB

UNITED STATES OF AMERICA,

    Respondent.

_____/

## **ORDER**

Jason Dean Barnes, through counsel, moves under 28 U.S.C. § 2255 to vacate his conviction and sentence for one count of receiving child pornography. (Civ. Doc. 1, § 2255 Motion.)[1] He alleges that trial counsel and appellate counsel gave ineffective assistance, that the government used illegally obtained evidence, and that the government encouraged his illegal conduct. The United States responded in opposition (Civ. Doc. 7, Response) and Barnes replied (Civ. Doc. 10, Reply). Thus, the case is ripe for a decision.

Under 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and

---

[1]  "Civ. Doc. __" refers to entries on the civil § 2255 docket, No. 3:21-cv-96-BJD-PDB. "Crim. Doc. __" refers to entries on the criminal docket, No. 3:15-cr-112-BJD-PDB.

[2]  Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

1

determines that a hearing is unnecessary to resolve the merits. No evidentiary hearing is required because Barnes's allegations are affirmatively contradicted by the record, patently frivolous, or even assuming the facts he alleges are true, he still would not be entitled to relief. <u>Rosin v. United States</u>, 786 F.3d 873, 877 (11th Cir. 2015); <u>see also</u> <u>Patel v. United States</u>, 252 F. App'x 970, 975 (11th Cir. 2007).[3] Thus, Barnes's § 2255 Motion will be denied.

## I.  Background

Barnes was one of 350 individuals in the United States who were arrested as part of Operation Pacifier, an FBI operation targeting users of a "dark web" child pornography website called Playpen.[4] In February 2015, FBI agents arrested Playpen's administrators and seized the website's hard drives from a web-hosting facility in North Carolina. (<u>See</u> Crim. Doc. 98, Stipulation of Facts at 2.) Rather than shut down the website, for 13 days in February and March 2015, the FBI operated Playpen out of a government facility in the Eastern District of Virginia, hoping to catch producers, distributors, and viewers of child pornography and potentially rescue their victims. <u>See</u> <u>id.</u> A federal magistrate judge in the Eastern District of Virginia issued a warrant authorizing the

---

[3]     The Court does not rely on unpublished opinions as binding precedent, but they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see</u> 11th Cir. R. 36–2.

[4]     https://www.fbi.gov/news/stories/playpen-creator-sentenced-to-30-years. Last visited Sept. 15, 2022.

government to (1) monitor Playpen's user communications and (2) deploy a "Network Investigative Technique" ("NIT") to identify the internet protocol ("IP") addresses of Playpen's users (the so-called "NIT warrant"). See id. Using the NIT, the FBI traced one Playpen user's account to an IP address registered to Barnes. Id. at 2–3. That account had accessed the website on February 28, 2015, and March 3, 2015. Id. at 2. Based on that information, FBI agents obtained a search warrant from a federal magistrate judge in Jacksonville, Florida, which authorized the FBI to search Barnes's residence for evidence of child pornography. Id. at 3.

On July 29, 2015, agents from the FBI and other departments executed the search warrant at Barnes's residence, where they seized a Toshiba laptop computer. Id. Barnes agreed to an interview with the agents, who advised Barnes he was not under arrest and was free to leave. Id. During the interview, Barnes admitted to searching for, downloading, and viewing child pornography. Id. He knew his conduct was illegal and said he felt guilt and shame after viewing illicit videos and images. Id. Barnes said that his wife, who also lived in the residence, shared the Toshiba laptop but was not responsible for or knowledgeable about the child pornography-related activities. Id. at 4. Barnes was using a "dark web" website when the agents entered his residence, and he "was concerned about the content that agents would find in the approximately 700 files that he was currently downloading." Id. An FBI forensic examiner, A.

Spurlock, conducted an onsite preview of Barnes's laptop and discovered a "video depicting a minor male engaged in masturbation," which Barnes had downloaded shortly before the agents arrived at his residence. Id. At the end of the interview and after the discovery of child pornography on Barnes's computer, the agents arrested him. Id. Later, forensic analysis of Barnes's computer revealed the presence of at least 500 videos and 5,000 images of child pornography. Id. at 5.

Shortly after his arrest, a federal grand jury indicted Barnes on one count of receiving child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). (Crim. Doc. 14, Indictment.) Barnes, who was represented by attorneys from the Federal Public Defender's Office, pleaded not guilty. He moved to dismiss the Indictment, arguing that the government had engaged in outrageous conduct by continuing to operate Playpen for 13 days rather than shutting it down immediately. (Crim. Doc. 43, In Camera Motion to Dismiss Indictment.) Barnes also moved to suppress "all evidence obtained from the government's illegal search of Mr. Barnes's computer through the deployment of a 'Network Investigative Technique,' and all fruits of the government's illegal search," including Barnes's statements and the results of any forensic examination of Barnes's computer. (Crim. Doc. 46, In Camera Motion to Suppress at 1.) He argued that the magistrate judge in Virginia who issued the NIT warrant exceeded her territorial jurisdiction by doing so.

A magistrate judge of this Court held an evidentiary hearing on the motion to dismiss the Indictment and the motion to suppress evidence. (Crim. Doc. 76, Evidentiary Hearing Transcript.) Afterward, the magistrate judge entered a report and recommendation in which she recommended that the Court deny the motions. (Crim. Doc. 83, Report and Recommendation ("R&R").) Barnes filed objections to the Report and Recommendation (Crim. Doc. 88, Objections to R&R), which the Court overruled. (Crim. Doc. 93, Order Denying Pretrial Motions.) The Court adopted the Report and Recommendation and denied the motions to dismiss the Indictment and to suppress evidence. Id.

Following the Court's ruling on the motions, Barnes proceeded to a bench trial on stipulated facts. (See generally Crim. Doc. 143, Bench Trial Transcript; see also Crim. Doc. 97, Waiver of Jury Trial; Crim. Doc. 98, Stipulation of Facts.) At the bench trial, Barnes stipulated to facts establishing each element of the charged offense, effectively admitting guilt but preserving his right to appeal the Court's ruling on the pretrial motions. The Court ultimately sentenced Barnes to a term of 72 months in prison. (Crim. Doc. 107, Judgment; Crim. Doc. 144, Sentencing Transcript.)

Barnes appealed his conviction and sentence, arguing "that the district court erred in denying his motion to suppress evidence obtained using a 'network investigative technique' ('NIT'), the use of which was authorized by a magistrate judge in the Eastern District of Virginia." United States v. Barnes,

777 F. App'x 966, 966 (11th Cir. 2019). Barnes "assert[ed] that the warrant authorizing use of the NIT was void <u>ab</u> <u>initio</u> because the issuing magistrate judge exceeded her authority under the 2015 version of Federal Rule of Criminal Procedure 41(b) and § 636(a) of the Federal Magistrates Act." <u>Id.</u> As a result, Barnes argued that any evidence seized under the NIT warrant amounted to a warrantless search. <u>Id.</u> The Eleventh Circuit rejected Barnes's argument. The court found that although the magistrate judge who issued the NIT warrant exceeded her authority, such that the NIT warrant was void, law enforcement officers could rely on the good-faith exception to the exclusionary rule. <u>Id.</u> at 967–68 (citing <u>United States v. Taylor</u>, 935 F.3d 1279 (11th Cir. 2019)). Thus, the Eleventh Circuit determined that the evidence seized under the NIT warrant was admissible and affirmed Barnes's conviction. <u>Id.</u> at 968.

Barnes petitioned the Supreme Court for certiorari review, which the Supreme Court denied. <u>Barnes v. United States</u>, 140 S. Ct. 978 (2020). These § 2255 proceedings timely followed.

## II.   Discussion

Under Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits collateral relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeded the

maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184–86 (1979); Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) ("[A] district court lacks the authority to review the alleged error unless the claimed error constitute[s] a fundamental defect which inherently results in a complete miscarriage of justice." (internal quotation marks omitted)). A petitioner's claim that he received ineffective assistance of counsel in violation of the Sixth Amendment is properly brought in a collateral proceeding under § 2255. Massaro v. United States, 538 U.S. 500, 504 (2003).

To establish ineffective assistance of counsel, a § 2255 movant must establish both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994) (citing Strickland, 466 U.S. at 688). The petitioner must show, given all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Scott v. United States, 890 F.3d

1239, 1258 (11th Cir. 2018) (internal quotation marks and citation omitted). In other words, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing Strickland, 466 U.S. at 687). To show that counsel's deficient performance prejudiced the defense, the petitioner must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Martin v. United States, 949 F.3d 662, 667 (11th Cir. 2020) (citation omitted). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. Because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

A § 2255 movant "bears the burden to prove the claims in his § 2255 motion." Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015); see also Beeman v. United States, 871 F.3d 1215, 1221–23 (11th Cir. 2017). If "'the evidence does not clearly explain what happened … the party with the burden loses.'" Beeman, 871 F.3d at 1225 (citation omitted). A § 2255 movant is not entitled to a hearing, much less relief, "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991)

(citation omitted).

## A. Ground One

First, Barnes alleges that his attorney—Assistant Federal Public Defender Susan Yazgi—gave ineffective assistance by providing misadvice that "deprived Mr. Barnes of a jury trial." § 2255 Motion at 4, 13. Barnes asserts:

> Defense counsel advised Mr. Barnes that he had a better chance with the district judge, than a jury because the jury would not understand the true nature of the crime. A position defense counsel bolstered by misadvising Mr. Barnes as to the intent element of the crime. Counsel did not explain that the concept of intent required purpose of doing an act; as well as doing the act itself. If counsel had advised Mr. Barnes that the judge had to apply the same standards as the jury, then Mr. Barnes would not have surrendered his right to a jury.
>
> Similarly, if counsel had explained that the government had to prove he intended to have control and domain over the illegal images when they were accessed, then he would have insisted on a jury trial since the jury (his peers) would understand the confusing nature of the internet.

<u>Id.</u> at 13 (sic).

These allegations are baseless. The record makes plain that Barnes's decision to waive a jury trial had nothing to do with selecting the trier-of-fact he thought was likelier to acquit him. Barnes admitted that the government could prove beyond a reasonable doubt he was a registered user of Playpen, that he had searched for, knowingly downloaded, and viewed child pornography on his computer, and that he knew his conduct was illegal. Bench Trial Tr. at 12–17; <u>see also</u> Stipulation of Facts (Crim. Doc. 98). So, contrary to his allegations, Barnes's decision to waive a jury trial and proceed to a bench trial had nothing

to do with thinking "he had a better chance with the district judge." § 2255 Motion at 14. Nor did Barnes's choice have anything to do with a mistaken belief that the Court would apply a different standard than a jury would to the elements of "intent" or "control and domain" over the images. At the bench trial, the Court "underst[ood] the operative terms used [in the stipulated facts] to be defined consistent with the Eleventh Circuit Court of Appeals pattern jury instructions" and read those aloud. Bench Trial Tr. at 18–20. After hearing that and being found guilty, id. at 20–21, Barnes expressed no surprise or any desire to change his decision to go to a bench trial on the stipulated facts.

Rather, Barnes went to a bench trial on stipulated facts expressly to preserve his right to appeal the legal issues raised in his pretrial motions while also demonstrating his acceptance of responsibility. See Bench Trial Tr. at 12; Stipulation of Facts at 1; Sentencing Memorandum (Crim. Doc. 105) at 1. As Barnes said in his sentencing memorandum:

> Although Mr. Barnes elected a bench trial, he has always accepted responsibility for his crimes. Mr. Barnes is part of a bigger issue litigated throughout the country on the legality of the government's search of his computer through the deployment of a Network Investigative Technique …, the deployment of which was authorized by a single magistrate judge in the Eastern District of Virginia. The bench trial was held in order to preserve the issue for appeal.

Sentencing Memorandum at 1. Barnes did not contradict this strategy when he spoke at the sentencing hearing and expressed remorse for his crime. See Sentencing Tr. at 22–23. Because Barnes stipulated to facts establishing his

guilt (effectively pleading guilty), he received a three-level guidelines reduction for acceptance of responsibility, resulting in a lower guidelines range. (See Crim. Doc. 103, Presentence Investigation Report ¶¶ 35–37.) But because he technically went to trial, he preserved his right to appeal the Court's ruling on his pretrial motions, which he would have waived had he pleaded guilty. See United States v. Charles, 757 F.3d 1222, 1227 n.4 (11th Cir. 2014) (a guilty plea waives all non-jurisdictional defects in the proceedings, including issues related to the suppression of evidence). Thus, by proceeding to a bench trial on stipulated facts, Barnes received the benefit of a guilty plea—a three-level reduction for acceptance of responsibility—without the downside of waiving his appeal rights. This was a reasonable strategy, which the Court cannot say that "no competent counsel would have taken." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

The record also shows that Barnes knowingly and voluntarily waived his right to a jury trial and agreed to proceed based on stipulated facts. The parties submitted a signed Waiver of Jury Trial, which stated:

> The defendant, Jason Dean Barnes, by and through and after seeking the advice of the undersigned counsel, hereby waives his right to a jury trial in this case as provided for by the Sixth Amendment to the United States Constitution. As grounds for this waiver, the defendant states as follows:
>
> 1. I understand that I am charged in Count One of the indictment in this case with knowing receipt of child pornography, in violation of [18 U.S.C. §§ 2252(a)(2) and (b)(1)], and that the minimum and maximum penalties for this count are a term of imprisonment of not less than 5 years and not more than 20 years, $250,000 in fines, or both, a term

of supervised release of any term of years, not less than 5, or life, a mandatory special assessment of $100, and an additional special assessment of $5,000 if determined to be non-indigent.

2. I understand that I have a right under the Sixth Amendment to the United States Constitution to a trial by jury in this case.

3. I understand that the right to trial by jury includes the assistance of counsel, the right to confront and cross-examine the witnesses against me, the right against compulsory self-incrimination, that is, the right <u>not</u> to testify, and the right to secure compulsory process for the attendance of witnesses to testify in my defense.

4. <u>Understanding all of the rights associated with trial by jury and after considering the advice of my counsel, I hereby waive my right to trial by jury, and agree instead to allow this Court to act as the trier of fact in this case based upon a written stipulation containing facts that is submitted to the Court by the parties.</u>

5. <u>In making this election to waive my right to trial by jury, I further state, under oath, that I have had sufficient time to consult with my attorney, Susan G. Yazgi, Esq., about waiving my right to trial by jury and I acknowledge that I am entering into this waiver freely, knowingly, intelligently and voluntarily, without promise or benefit of any kind and without threats, force, intimidation, or coercion of any kind.</u>

Waiver of Jury Trial (Crim. Doc. 97) at 1–2 (emphasis added). Barnes gave similar assurances under oath at the bench trial. Bench Trial Tr. at 4–8, 9–10. And Barnes stated under oath that he had read and signed the Stipulation of Facts that accompanied the Waiver of Jury Trial. <u>Id.</u> at 8. Barnes "bears a heavy burden to show his [sworn] statements [at the bench trial] were false," <u>United States v. Rogers</u>, 848 F.2d 166, 168 (11th Cir. 1988), and he has not done so.

That said, even if counsel misadvised Barnes that the Court would apply a different standard to certain elements of the offense than a jury would, he

fails to show "a reasonable probability that but for his counsel's failure to ensure a proper waiver of his Sixth Amendment right to be tried before a jury, he would have exercised that right." <u>Vickers v. Super-intendent Graterford SCI</u>, 858 F.3d 841, 857 (3d Cir. 2017), <u>as amended</u> (July 18, 2017); <u>see also</u> <u>Lynch v. Sec'y, Fla. Dep't of Corr.</u>, 776 F.3d 1209, 1228–29 (11th Cir. 2015) (in deciding whether the petitioner was prejudiced by his attorneys' advice to waive his right to a jury at the sentencing phase, assuming, without deciding, that the prejudice analysis focuses on whether there is a reasonable probability the defendant would not have waived his right to a jury (citing <u>Hill v. Lockhart</u>, 474 U.S. 52, 58–59 (1985))). Here, "the record is devoid of any credible evidence that [Barnes] otherwise would have opted for a jury trial and affirmatively indicates that he made an informed, strategic decision to proceed with a bench trial after … consultations with his counsel." <u>Vickers</u>, 858 F.3d at 857.

Moreover, had Barnes been correctly advised about the standards a jury would apply to the elements of "intent" and "control and domain" over the images (assuming he was not properly advised), there is not a reasonable likelihood it would have changed his decision. As to "intent," a jury would have been instructed that to find Barnes guilty, he must have knowingly received a visual depiction and he must have known "that at least one performer in the visual depiction was a minor and knew that the depiction showed the minor engaged in sexually explicit conduct." Eleventh Cir. Pattern Crim. Jury Instr.

OI O83.2; <u>accord</u> <u>United States v. X-Citement Video, Inc.</u>, 513 U.S. 64, 77–78 (1994). Barnes stipulated that the government could prove beyond a reasonable doubt that he "knowingly downloaded the images and videos of child pornography contained on his computer media, including the video identified in Count One of the indictment," and that he "knew that at least one of the performers in each of the visual depictions that he received and possessed was a minor child and that the visual depictions were of such minors engaged in sexually explicit conduct." Stipulation of Facts at 5. Indeed, just before he was arrested, Barnes admitted to FBI agents that he searched for, downloaded, and viewed child pornography despite knowing that images and videos depicting minors engaged in sexually explicit conduct are illegal, <u>id.</u> at 3, demonstrating that Barnes's conduct was no accident or mistake. Barnes admitted that he felt guilt and shame after viewing such images. <u>Id.</u> Forensic analysis of Barnes's laptop revealed that it contained at least 500 videos and at least 5,000 images depicting child pornography. <u>Id.</u> at 5. Barnes suggested to agents that his area of interest was "young teens." <u>Id.</u> at 4. Further, the government had evidence showing that Barnes's IP address was linked to a registered Playpen user—"abcdefghijk123"—and that this account had been logged in to the Playpen website for 82 hours between November 2014 and March 2015. <u>Id.</u> at 2. Given these uncontested facts, Barnes cannot show a reasonable probability he would have opted for a jury trial instead of a bench trial had he known what standard

a jury would apply to the "intent" element. <u>See</u> <u>Vickers</u>, 858 F.3d at 857.

As for the concept of "control and domain" over the images, a jury would have been instructed that to find Barnes guilty, he must have knowingly "received" a visual depiction of child pornography, and that "[t]o 'receive' something simply means knowingly to accept or take possession of something. Receipt does not require proof of ownership." Eleventh Cir. Pattern Crim. Jury Instr. OI O83.2; <u>accord</u> Bench Trial Tr. at 18. Again, Barnes confessed to FBI agents that he searched for, downloaded, and viewed child pornography on his computer. Stipulation of Facts at 3. He acknowledged that his Comcast internet router "require[d] a password to gain access to the wireless network." <u>Id.</u> at 4. Barnes admitted that the Toshiba laptop that contained child pornography was his. <u>See</u> <u>id.</u> at 4, 5. And while Barnes stated that he shared the Toshiba laptop with his wife, he denied that she "responsible for or knowledgeable of the illegal images or videos of 'young teens' that he had downloaded, possessed, and received." <u>Id.</u> at 4. Given these facts, Barnes cannot show a reasonable probability he would have opted for a jury trial instead of a bench trial had he known the standard a jury would apply to the receipt element (or in his words, "control and domain" over the images"). <u>See</u> <u>Vickers</u>, 858 F.3d at 857.

For the reasons above, Barnes fails to show deficient performance or prejudice under <u>Strickland</u> in relation to his decision to waive a jury trial. Thus, relief on Ground One is due to be denied.

**B. Ground Two**

Barnes next alleges that the "Government relied upon evidence illegally obtained from a court without jurisdiction to convict Mr. Barnes. Hence, the Constitution invalidates the conviction." § 2255 Motion at 5; <u>see also</u> <u>id.</u> at 13. He asserts that the government deliberately sought a search warrant in Virginia because it "knew it could not obtain a warrant in the proper venue." <u>Id.</u> at 13. Barnes argues that the federal magistrate judge in the Eastern District of Virginia who issued the NIT warrant "exceeded [her] power and authority" by issuing the warrant, and that "an action taken by a court without jurisdiction is a nullity—at law, it never existed." <u>Id.</u> He contends that this Court "violated due process when it permitted an indictment or conviction that relied on a legal nullity. The criminal judgment should be vacated, and the indictment dismissed." <u>Id.</u>

This claim does not merit relief because Barnes has litigated this issue already. "It is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence … that he already raised and that [the appeals court] rejected in his direct appeal." <u>Stoufflet v. United States</u>, 757 F.3d 1236, 1239 (11th Cir. 2014) (collecting cases); <u>see also</u> <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000). "At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255

proceeding." <u>Rozier v. United States</u>, 701 F.3d 681, 684 (11th Cir. 2012).

In his motion to suppress, Barnes (through his public defender) argued that the evidence the government collected under the NIT warrant was unlawfully obtained because the magistrate judge who issued the NIT warrant in the Eastern District of Virginia exceeded her territorial jurisdiction. <u>See</u> In Camera Motion to Suppress (Crim. Doc. 46) at 7–18. Following an evidentiary hearing, this Court denied the motion to suppress (and motion to dismiss the Indictment), concluding that even if the NIT warrant exceeded the scope of the issuing judge's authority, the good-faith exception to the exclusionary rule applied. Report and Recommendation (Crim. Doc. 83) at 29–39; Order Denying Pretrial Motions (Crim. Doc. 93) at 8–9.

Barnes challenged that ruling on direct appeal, arguing that the NIT warrant was invalid and that the good-faith exception did not apply because "the [FBI] agents who obtained the warrant misled the magistrate judge as to the territorial scope of the search and should have been aware that the NIT warrant could not have been authorized under the 2015 version of [Federal Rule of Criminal Procedure] 41(b)." <u>Barnes</u>, 777 F. App'x at 966. The Eleventh Circuit rejected these arguments, concluding that while the NIT warrant was unauthorized, law enforcement officers could rely on the good-faith exception. <u>Id.</u> at 967–68. The court explained:

This Court recently addressed both of Barnes's arguments in <u>United States v. Taylor</u>, 935 F.3d 1279, 2019 WL 4047512 (11th Cir. Aug. 28, 2019). First, we held that the NIT warrant was not authorized by Federal Rule of Criminal Procedure 41(b). <u>Taylor</u>, 935 F.3d at 1286–87, 2019 WL 4047512 at *6. In issuing the warrant, the magistrate judge exceeded her authority granted in 28 U.S.C. § 636, thus rendering the warrant void at issuance and the resulting search violative of the Fourth Amendment. <u>Id.</u> at 1287–88, at *7. However, we held that the good-faith exception to the exclusionary rule was available, even in the case of a void warrant. <u>Id.</u> at 1290–91, at *9. We held that the FBI agents who sought the warrant were entitled to that exception because there was no indication that they "sought to deceive the magistrate judge or otherwise acted culpably or in a way that necessitates deterrence—and certainly no indication of the sort of 'deliberate[ ], reckless[ ], or ... gross[ly] negligen[t]' conduct that the Supreme Court has recently highlighted as the focus of the exclusionary-rule/good-faith inquiry." <u>Id.</u> at 1291, at *10 (quoting <u>Davis v. United States</u>, 564 U.S. 229, 240, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011)). The application and affidavit sufficiently divulged the extent of the search, and the officers left the constitutionality of the search to the magistrate judge. <u>Id.</u> at 1292–93, at *11. We concluded that because we did not find the officers culpable and saw no deterrent value in suppressing the evidence found on the defendants' computers, the good-faith exception applied. <u>Id.</u>

Barnes's case is entirely controlled by the decision in <u>Taylor</u> because he raises the same arguments based on the same operative facts. Therefore the judgment of the district court is **AFFIRMED.**

<u>Barnes</u>, 777 F. App'x at 967–68.

Barnes fails to point to any "intervening change in controlling law" that would allow re-litigation of the suppression issue on collateral review. <u>Rozier</u>, 701 F.3d at 684. Because the issue was litigated and resolved against him on direct appeal, Barnes may not relitigate the issue through a motion to vacate sentence. <u>Stoufflet</u>, 757 F.3d at 1239; <u>Nyhuis</u>, 211 F.3d at 1343.[5]

---

[5]     The suppression issue likely fails for another reason. Relying on <u>Stone v. Powell</u>, 428 U.S. 465 (1976), several courts have held that as long as the petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, a freestanding Fourth Amendment claim

Liberally construing his Reply brief, Barnes also seems to argue that this Court lacked subject matter jurisdiction over his case because the magistrate judge in Virginia exceeded her authority in issuing the NIT warrant. See Reply at 1–6. He is wrong. Barnes confuses the concept of subject matter jurisdiction with a magistrate judge's territorial jurisdiction to issue a search warrant. But the latter does not implicate the former. See United States v. 526 Liscum Drive, 866 F.2d 213, 217–18 (6th Cir. 1989) ("Although claimant seeks to characterize an issue of whether the Liscum Drive property was within the territorial jurisdiction of the municipal court that issued the search warrant as an issue of subject matter jurisdiction that may be raised at any time, that issue does not relate in any way to the subject matter jurisdiction of the federal court."), abrogation on other grounds recognized by United States v. Certain Real Prop. Located at 16510 Ashton, 47 F.3d 1465, 1470 (6th Cir. 1995).

---

is not cognizable under § 2255 because the costs of applying the exclusionary rule in the post-conviction context outweigh its deterrence benefits. See United States v. Ishmael, 343 F.3d 741, 742–43 (5th Cir. 2003); Ray v. United States, 721 F.3d 758, 761–62 (6th Cir. 2013); Brock v. United States, 573 F.3d 497, 500–01 (7th Cir. 2009); United States v. Hearst, 638 F.2d 1190, 1196 (9th Cir. 1980); United States v. Cook, 997 F.2d 1312, 1317 (10th Cir. 1993) ("[I]t is clear that the [Supreme] Court intends for Fourth Amendment claims to be limited in § 2255 proceedings as they are limited in § 2254 proceedings—i.e., to be addressed only if a defendant has not had a full and fair opportunity to raise the claims at trial and on direct appeal."); see also United States v. Brown, 663 F.2d 229, 232–39 (D.C. Cir. 1981) (Wilkey, J., concurring); but see Baranski v. United States, 515 F.3d 857, 859–60 (8th Cir. 2008) (concluding that a Fourth Amendment claim is still cognizable under § 2255). Because Barnes fails to show that he lacked a full and fair opportunity to litigate the suppression issue, Stone also appears to bar granting collateral relief on this claim.

Federal district courts have "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. "So long as the indictment charges the defendant with violating a valid federal statute as enacted in the United States Code, it alleges an 'offense against the laws of the United States' and, thereby, invokes the district court's subject-matter jurisdiction." United States v. Brown, 752 F.3d 1344, 1354 (11th Cir. 2014) (citation omitted). Here, the Indictment charged Barnes with violating 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), a valid criminal statute in the United States Code. The Indictment not only cites the statute, it tracks the statutory language of § 2252(a)(2). Compare Indictment at 1 with 18 U.S.C. § 2252(a)(2). By doing so, the Indictment did all that was necessary to invoke this Court's subject matter jurisdiction under § 3231. Brown, 752 F.3d at 1353.[6]

Barnes may not relitigate his challenge to the collection of evidence under the NIT warrant. And liberally construing his Reply as challenging the Court's subject matter jurisdiction, that claim fails as well. Thus, relief on this ground is due to be denied.

---

[6] In his Reply, Barnes also appears to raise a new ineffective assistance claim: that "[t]he record was not built by Petitioner's then attorneys as it should have" in relation to the Court's subject matter jurisdiction or the territorial jurisdiction of the magistrate judge who issued the NIT warrant. Reply at 4. For one, this claim is too vague and conclusory to warrant an evidentiary hearing, much less habeas relief. Tejada, 941 F.2d at 1559. For another, a § 2255 movant must raise all of his claims and supporting facts in the § 2255 motion. See Rule 2(b), Rules Governing Section 2255 Proceedings in the U.S. Dist. Courts. A § 2255 movant may not raise new claims in a reply to the government's response. Oliveiri v. United States, 717 F. App'x 966, 967 (11th Cir. 2018). And Barnes did not request leave to amend the § 2255 Motion to raise a new claim. Thus, any new claims in the Reply brief are not properly before the Court.

## C. Ground Three

Next, Barnes alleges that his appellate counsel gave ineffective assistance by relying on the appellate briefs in a different case. § 2255 Motion at 7, 14. According to Barnes, "[i]n light of limited resources, defense counsel attached Mr. Barnes's appeal to that of a similar case, instead of particularizing Mr. Barnes's claim to his record and facts." Id. at 14. By "depend[ing] on the arguments and efforts of the attorneys in the other case," he contends, counsel "involuntarily shifted Mr. Barnes's representation to attorneys that had no duty of loyalty to Mr. Barnes, thereby depriving Mr. Barnes of counsel including counsel for his certiorari petition." Id.[7] Barnes vaguely invites the Court to "follow Eleventh Circuit protocol and review Mr. Barnes's direct appeal rights," id., though he fails to elaborate on what he means.

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland." Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (citation omitted). Thus, "a petitioner must show both that [appellate] counsel's performance was so deficient that it fell

---

[7]    A criminal defendant has a Sixth Amendment right to the assistance of counsel through his direct appeals as of right, Evitts v. Lucey, 469 U.S. 387, 393 (1985) (citing Ross v. Moffitt, 417 U.S. 600 (1974)), but he "has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction," Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Because certiorari review by the Supreme Court is discretionary and not a matter of right, a defendant has no right to the assistance of counsel in petitioning the Supreme Court for certiorari review. Ross, 417 U.S. at 616–18; Wainwright v. Torna, 455 U.S. 586, 587 (1982).

below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Dell v. United States, 710 F.3d 1267, 1273 (11th Cir. 2013) (internal quotation marks and citations omitted).

The appellate record refutes Barnes's allegations. The Court has reviewed the merits brief that Barnes's appellate counsel filed on direct appeal. United States v. Barnes, No. 18–10458–GG (11th Cir.), Initial Brief of Appellant Barnes (filed Jun. 7, 2018). Contrary to Barnes's allegations, his appellate counsel did not merely "attach[ ] Mr. Barnes's appeal to that of a similar case" or fail to file an individualized brief. Rather, the appellate brief was customized to fit the facts and procedural history of Barnes's case and advanced the legal arguments central to his motion to suppress: that the NIT warrant exceeded the scope of the issuing judge's authority, that any evidence gathered as a result of the NIT warrant was illegally obtained, and that law enforcement officers could not rely on the good-faith exception. These arguments raised important legal questions about the government's use of a network investigative technique like the one here, which at the time commanded the attention of courts around the country. See, e.g., United States v. Eldred, 933 F.3d 110 (2d Cir. 2019); United States v. Werdene, 883 F.3d 204 (3d Cir. 2018); United States v. Horton, 863 F.3d 1041 (8th Cir. 2017); United States v. Henderson, 906 F.3d 1109 (9th Cir. 2018). And because the operative facts about the deployment of the NIT

were essentially the same for all defendants arrested in Operation Pacifier, it is unsurprising that many of the facts Barnes raised would be the same as those raised by other defendants. Moreover, because there was no real doubt about Barnes's factual guilt—given his admissions to FBI agents and the discovery of child pornography on his laptop—it was reasonable for his counsel to focus on attacking the NIT warrant, hoping to get the evidence suppressed.

While Barnes's legal arguments might have been identical to those in another case, he fails to show why that was objectively unreasonable under Strickland, especially if, as Barnes admits, the other case involved similar legal issues. See § 2255 Motion at 14 ("In light of limited resources, defense counsel attached Mr. Barnes' appeal to that of a similar case…."). In United States v. Taylor, 935 F.3d 1279 (11th Cir. 2019), the Eleventh Circuit rejected the same legal arguments that Barnes raised on appeal, but Taylor was not decided until the year after Barnes's counsel submitted the initial brief. Thus, when Barnes's counsel filed the brief, she could not have known whether the Eleventh Circuit would accept or reject her legal arguments. See Rambaran v. Sec'y, Dep't of Corr., 821 F.3d 1325, 1334 (11th Cir. 2016) (in rejecting a claim of ineffective assistance of appellate counsel: "[w]e have held many times that reasonably effective representation cannot and does not include a [r]equirement to make arguments based on predictions of how the law may develop." (internal quotation marks and citation omitted)). Barnes fails to explain what arguments

23

appellate counsel should have advanced instead or why there is a reasonable probability that, had she put forth different theories, the Eleventh Circuit would have vacated Barnes's conviction. See Dell, 710 F.3d at 1273.

Thus, Barnes fails to show that his appellate counsel rendered deficient performance or that he suffered prejudice under Strickland. Relief on Ground Three is due to be denied.

### D. Ground Four

Finally, Barnes alleges that "[t]he government intentionally encouraged criminal conduct and engaged in forum shopping to obtain a search warrant." § 2255 Motion 8. According to Barnes, the government "encourag[ed] Mr. Barnes' arguably illegal conduct" by operating the Playpen child pornography website instead of immediately shutting it down, and it "should have been estopped from prosecuting Mr. Barnes, since it was the government[ ] which initiated and controlled the computer technology that generated illegal behavior." Id. at 14. Barnes contends that the government, "realiz[ing] it lacked evidence to prove its case" or to obtain an indictment, "intentionally chose an alien forum [the Eastern District of Virginia] and misinformed that court as to the factual circumstances in order to obtain a search warrant that the Constitution otherwise forb[ade]." Id. He also alleges that the government "breached its duty to ensure a fair trial." Id. at 8.

24

To the extent Barnes argues that the government engaged in outrageous conduct, engaged in forum-shopping, or violated his right to a fair trial, all these claims are procedurally defaulted because he failed to raise them on direct appeal. This Court specifically held a hearing on, and rejected, Barnes's motion to dismiss the Indictment based on outrageous government conduct. Report and Recommendation (Crim. Doc. 83) at 12–23; Order Denying Pretrial Motions (Crim. Doc. 93) at 3, 9. Thus, the issue was preserved for direct appeal but Barnes did not raise it.

"Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted). "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal," including constitutional claims, "or else the defendant is barred from presenting that claim in a § 2255 proceeding." Id. at 1234 (citations omitted). "A defendant can avoid a procedural bar only by establishing one of two exceptions to the procedural default rule." Id. The first is the cause-and-prejudice exception, under which "a § 2255 movant can avoid application of the procedural default bar by 'show[ing] cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error.'" McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (quoting Lynn, 365 F.3d at 1234). The other

exception is actual innocence, under which "a movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself." Id.

Barnes makes no real effort to overcome the procedural default of his government misconduct claims. See § 2255 Motion at 7, 14; see generally Reply (focusing on jurisdictional and suppression issues). The closest he comes is in section 13 of the § 2255 Motion, which asks: "Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them." § 2255 Motion at 9 (emphasis in original). Barnes responded: "To some extent all grounds are new since each relies upon facts which were not within the record at the time of the direct appeal." Id. But Barnes does not elaborate on which facts he is referring to, nor does he claim he could not have discovered and created a record of such facts during the trial proceedings. See Mathis v. United States, No. 18–14658–E, 2019 WL 11880631, at *2 (11th Cir. May 7, 2019) (denying certificate of appealability; concluding that § 2255 movant failed to establish cause for procedurally defaulting a claim based on Brady v. Maryland, 373 U.S. 83 (1963), "because he had the government's forensic reports and could have discovered the alleged illegal access of his phone prior to trial, but failed to do so."). Thus, Barnes procedurally defaulted his claims that the government engaged in outrageous conduct, engaged in forum-

shopping, or violated his right to a fair trial, and he fails to show that the cause-and-prejudice or actual innocence exceptions apply to his case.[8]

To the extent Barnes asserts that law enforcement officers "misinformed" the court that issued the NIT warrant "as to the factual circumstances in order to obtain a search warrant that the Constitution otherwise forb[ade]," § 2255 Motion at 14, this claim relates to whether the good-faith exception to the exclusionary rule applied. And that issue was litigated and resolved against Barnes on direct appeal. See Barnes, 777 F. App'x at 967–68; see also Taylor, 935 F.3d at 1290–93. The Eleventh Circuit concluded "that the FBI agents who sought the warrant were entitled to [the good faith] exception because there was no indication that they sought to deceive the magistrate judge or otherwise acted culpably or in a way that necessitates deterrence—and certainly no indication of the sort of deliberate, reckless, or grossly negligent conduct that the Supreme Court has recently highlighted as the focus of the exclusionary-rule/good-faith inquiry." Barnes, 777 F. App'x at 967 (internal quotation marks, alterations, and citations omitted). Because Barnes fails to point to any intervening change in controlling law, he is barred from relitigating this issue in his § 2255 Motion. See Rozier, 701 F.3d at 684; Nyhuis, 211 F.3d at 1343. Thus, relief on this claim is due to be denied.

---

[8]     Given his admissions to the FBI and the Stipulation of Facts (Crim. Doc. 98), Barnes cannot plausibly allege that he is actually innocent of the offense.

## III.   Conclusion

Having reviewed each of Barnes's claims and finding that none warrants relief under 28 U.S.C. § 2255, it is **ORDERED:**

1. Petitioner Jason Dean Barnes's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. The Clerk will enter judgment for the United States and against Barnes, and close the file.

3. If Barnes appeals the denial of the petition, the Court denies a certificate of appealability (COA).[9] Because this Court has determined that a COA is not warranted, the Clerk will terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination will serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 28th day of September, 2022.

_____
BRIAN J. DAVIS
United States District Judge

---

[9]     This Court should issue a COA only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court finds that a COA is not warranted.

lc 19
Copies:
Counsel of record
Petitioner